**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ANGEL AJANI,** **Individually and on behalf of all others similarly situated,** **Plaintiff,** v. **ADVOCATE AURORA HEALTH, INC.,** **Defendant.** | Case No. _____ |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441 *et seq.*, Defendant Advocate Aurora Health, Inc. hereby files this notice of removal of the above-captioned action to this Court and respectfully states as follows:

**I. INTRODUCTION**

1. The above-captioned case arises from an alleged data vulnerability and breach incident involving Plaintiff Angel Ajani and Defendant Advocate Aurora Health, Inc. ("AAH"). Ajani, on behalf of a putative class consisting of "millions of [AAH's] own patients," alleges violations of the Illinois Consumer Fraud Act ("ICFA") and brings common claims for negligence, invasion of privacy, breach of contract, and breach of implied contract. (Complaint ¶¶ 1; 64-109.)

2. The above-captioned action is properly removed to this Court pursuant to the federal removal statute, 28 U.S.C. § 1441, because: (i) the action is pending in the Circuit Court of Cook County, Illinois, which is the within the Northern District of Illinois, Eastern Division, 28 U.S.C. § 93(a)(1); (ii) this Court has original jurisdiction; and (iii) the procedural requirements for removal set forth in 28 U.S.C. § 1446 and 28 U.S.C. § 1453 are satisfied.

3. More specifically, this Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this case is a class action, the parties are minimally diverse, and the amount in controversy exceeds $5 million.

## II. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

4. AAH is the sole named Defendant in Civil Action No. 2022-CH-10471 (the "State Court Class Action"), an action filed in the Circuit Court of Cook County, Illinois by Plaintiff on behalf of millions of class members seeking relief under ICFA and for alleged tort and contract violations.

5. The Complaint in the State Court Class Action (the "Complaint") and accompanying Summons were filed with the Clerk of the Circuit Court of Cook County on October 24, 2022. Defendant accepted service of process in Illinois on October 27, 2022.

6. This Notice of Removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (30-day time limit for removal runs from date of formal service of the complaint).

7. Defendant has not responded to the Complaint in the State Court Class Action because Defendant is removing this action before its responsive pleading deadline.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the State Court Class Action is pending within this district and division. *See* 28 U.S.C. § 93(a)(1).

9. A related case, *Alistair Stewart v. AAH and Meta*, No. 22-cv-5964, involves common questions of law and fact, and is currently pending before Judge Joan H. Lefkow.

10. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders are attached hereto as Exhibit A.

11. Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly file a removal notice with the Clerk of the Circuit Court of Cook County, Illinois, and will serve written notice of the same upon counsel of record for Plaintiff.

12. In compliance with 28 U.S.C. § 1446(a), this Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

### III. CAFA JURISDICTION

13. As set forth below, this Court has original subject matter jurisdiction over the above-captioned action, which is removable under 28 U.S.C. §§ 1332(d) and 1453(b).

14. Under CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *see also Hart v. FedEx Ground Package Sys. Inc.,* 457 F.3d 675, 679-82 (7th Cir. 2006) (describing elements of CAFA jurisdiction).

15. To be removed under CAFA, this suit must qualify as a class action, there must be 100 members of the proposed class, the amount in controversy must exceed $5 million, and there must be minimum diversity between the parties. 28 U.S.C. § 1332(d); 28 U.S.C. § 1453. All CAFA requirements are met here.

#### a. This Case is a Class Action

16. CAFA applies because the suit qualifies as a class action. Plaintiff, as master of her Complaint, purports to bring a "class action…on behalf of Class Members whose personally identifiable information and Private Health Information…was improperly shared with other third parties without their knowledge or consent." (Complaint ¶ 1.) And Plaintiff sets forth specific

class allegations in seeking to plead the requirements of 735 ILCS 5/2-801, the statute prescribing the "[p]rerequisites for the maintenance of a class action" under Illinois law. (Complaint ¶ 56.)

17. In her Complaint, Plaintiff references the numerosity, commonality, and predominance, adequacy of representation, and appropriateness elements required to bring a class action under Illinois law (Complaint ¶¶ 59-62).

### b. CAFA's 100-Member Requirement is Met

18. The Complaint satisfies CAFA's 100-member requirement. In determining whether this requirement is met, the Northern District of Illinois has considered the number of people who may have been potentially affected by the defendant's alleged misconduct, rather than the number of people who actually have been affected by such conduct. *See, e.g., Nieto v. Perdue Farms, Inc.*, 2010 WL 1031691, at *2 (N.D. Ill. Mar. 17, 2010) ("Although Nieto has not specifically addressed these three [CAFA jurisdictional] requirements, all have been satisfied. First, Nieto has defined the class as '[a]ll persons who purchased a Perdue whole chicken at retail from October 13, 2003 to present' which, if certified, *would surely exceed 100 members* and satisfy CAFA's first requirement.") (emphasis added) (citation omitted).

19. The putative class in the State Court Class Action consists of a National Class, which Plaintiff defines as "[a]ll individuals whose PII or PHI was disclosed while in the possession of Defendant, or any of their subsidiaries and/or agents, during the Data Breach," and an Illinois Sub-Class, defined as "[a]ll individuals in Illinois whose PII or PHI was disclosed while in the possession of Defendant, or any of their subsidiaries and/or agents, during the Data Breach." (Complaint ¶ 54.)

20. Plaintiff alleges, "the Classes are so numerous that joinder of all individual plaintiffs would be impracticable… It is reasonable to infer that more than 40 individuals in each class were impacted by the data breach at issue." (Complaint ¶ 59.)

21. However, Plaintiff also alleges, "[t]he putative Classes are comprised of millions of persons…." (Complaint ¶ 57.), that Defendant "has, by its own estimates, at least 3 million patients" (Complaint ¶ 26) and "Defendant notified the U.S. Department of Health and Human Services Office of Civil Rights that it had suffered an 'Unauthorized Access/Disclosure' or [*sic*] 'Electronic Medical Record[s]' that affected roughly 3 million patients." (Complaint ¶ 40.) The potential number of people who have been or may be affected thus well exceeds the 100-member requirement under CAFA.

### c. CAFA's Minimal Diversity Requirements are Met

22. There is minimal diversity between Plaintiff and putative class members and Defendant under CAFA. CAFA eliminated the requirement of complete diversity: federal district courts have original jurisdiction of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which ... *any member of a class of plaintiffs is a citizen of a State different from any defendant.*" 28 U.S.C. § 1332(d)(2). Instead, CAFA requires only minimal diversity—meaning that the parties are diverse if the plaintiff's citizenship differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

23. For purposes of establishing diversity jurisdiction, "[c]itizenship it determined on the basis of domicile, not residence." *Pollution Control Indus. of Am., Inc. v. Van Gundy*, 21 F.3d 152, 155 (7th Cir. 1994).

24. Plaintiff alleges she "was a…citizen of the State of Illinois during all times relevant to this complaint." (Complaint ¶¶ 24-25.)

25. Plaintiff brings her claims on behalf of both a National Class and an Illinois Sub-Class. (Complaint ¶ 54.) Accordingly, Plaintiff purports to represent a National Class consisting of members outside of Illinois.

26. Plaintiff alleges that Defendant "is a Delaware not-for-profit corporation that does business in Illinois and other states" and "is comprised of Advocate Health Care in Illinois and Aurora Health Care in Wisconsin." (Complaint ¶¶ 24-25.)

27. Defendant is organized in Delaware and maintains its principal place of business in Wisconsin.

28. Thus, because Plaintiff is an Illinois citizen purporting to represent a *national* class in bringing claims against AAH, a Delaware-organized non-profit corporation with its principal place of business in Wisconsin, CAFA's minimal diversity requirements are met.

### d. The Amount in Controversy Exceeds the Jurisdictional Limit

29. The amount in controversy in this matter exceeds $5,000,000, the jurisdictional threshold under CAFA. Where, as here, Plaintiffs allege no specific damages amount, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88-89; *see also Nieto*, 2010 WL 1031691, at *2 ("[G]iven the large number of plaintiffs, and that the Illinois Consumer Fraud and Deceptive Business Practices Act ('ICFA') permits recovery of punitive damages and attorney's fees, *it is plausible that the amount in controversy will exceed $5,000,000*") (emphasis added). And, in making such determinations, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

30. Here, "[t]he putative Classes are comprised of millions of persons" (Complaint ¶ 57) and Plaintiff asserts claims for compensatory damages attributable to "direct theft, identity theft, expenses for credit monitoring and identity theft insurance, out-of-pocket expenses, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm" (Complaint, Request for Relief ¶ D), as well as for punitive damages and attorneys' fees (Complaint, Request for Relief ¶ G).

31. Plaintiff also seeks injunctive relief ordering AAH to provide: "(i) adequate credit monitoring, (ii) adequate identity theft insurance, (iii) instituting security protocols in compliance with the appropriate standards and (iv) requiring Defendant to submit to periodic compliance audits by a third party regarding the security of Private Information in its possession, custody and control." (Complaint, Request for Relief ¶ E.)

32. The Seventh Circuit adheres to the "either viewpoint" rule when assessing the jurisdictional amount. *See McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 391-95 (7th Cir. 1979). Under that approach, "the jurisdictional amount should be assessed looking at either the benefit to the plaintiff *or the cost to the defendant* of the requested relief." *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) (emphasis added). Accordingly, the costs AAH would incur in complying with an order of injunctive relief are fair game in assessing whether Plaintiff has plausibly alleged an amount in controversy sufficient to confer jurisdiction under CAFA.

33. Plaintiff alleges that AAH "operates 27 hospitals, more than 500 sites of care, employees [sic] over 10,000 physicians, and has roughly $14,000,000 [sic] in annual revenue. It additionally has, by its own estimates, at least 3 million patients." (Complaint ¶ 26.) While Plaintiff misstates Defendant's annual revenues as $14 million, she cites to the source from Defendant's website which has the proper figure. (*See* Complaint n. 3 (citing Advocate Aurora Health Fact Sheet (March 31, 2022) https://www.advocateaurorahealth.org/pdfs/system-fact-sheet-nov-2021.pdf (publishing $14 billion in annual revenues as of and for the year ended March 31, 2022)).) The scale of Defendant's business, as alleged by Plaintiff, makes it reasonable to infer that Defendant would incur substantial costs in complying with an injunction requiring it to conduct additional audits and to secure identity theft insurance. Therefore, the cost to Defendant

of injunctive relief, in concert with Plaintiff's claims for damages on behalf of the putative class, plausibly places the amount in controversy above $5 million.

34. Given the size of the putative class and the nature of Plaintiff's claims for compensatory and punitive damages, attorney's fees, and injunctive relief, the alleged amount in controversy plausibly exceeds $5 million.[1]

## IV. CONCLUSION

35. Because the procedural requirements for removal and CAFA's original jurisdiction requirements are satisfied, Defendant has properly removed the above-captioned action from the Circuit Court of Cook County, Illinois to this United States District Court for the Northern District of Illinois.

36. If any question arises as to the propriety of removal to this Court, Defendant respectfully requests the opportunity to present briefing and oral argument in support of removal.

37. By filing this Notice of Removal, Defendant does not waive, either expressly or implicitly, its rights to assert any defense of other objection that they could have asserted in the Circuit Court of Cook County, Illinois, including, without limitation, those related to personal jurisdiction, *forum non conveniens*, venue, or joinder.

**WHEREFORE**, Defendant Advocate Aurora Health, Inc., by counsel, removes the above captioned action from the Circuit Court of Cook County, State of Illinois, to this United States District Court for the Northern District of Illinois.

---

[1] The amount in controversy represents only what Plaintiffs request at this stage in the proceeding. This is not an admission that Plaintiffs are entitled to recover this amount. *See Plyler v. Whirlpool Corp.,* 2012 WL 469883, at *2 (N.D. Ill. Feb. 13, 2012) ("[A] defendant's statement in a Notice of Removal concerning the amount in controversy does not constitute a judicial admission to plaintiff's ultimate damage entitlement.").

Date: November 22, 2022                          Respectfully submitted,

By: /s/ Jeffrey J. Bushofsky
Jeffrey J. Bushofsky
jeffrey.bushofsky@ropesgray.com
Francis X. Liesman
francis.liesman@ropesgray.com
ROPES & GRAY LLP
191 N. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5559

*Counsel for Advocate Aurora Health, Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 22, 2022, the undersigned as counsel for Defendant Advocate Aurora Health, Inc. caused a copy of the foregoing Notice of Removal to be served on counsel of record listed below, via electronic mail:

Bryan Paul Thompson
Robert W. Harrer
CHICAGO CONSUMER LAW CENTER, P.C.
33 N. Dearborn St., Suite 400
Chicago, IL  60602
Phone: (312) 858-3239
Fax: (312) 610-5646
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

Michael Kind
Nevada Bar No. 13903
KIND LAW
8860 South Maryland Parkway, Suite 106
Las Vegas, NV  89123
Phone: (702) 337-2322
Fax: (702) 329-5881
mk@kindlaw.com

*Counsel for Plaintiff*

By: /s/ Jeffrey J. Bushofsky
Jeffrey J. Bushofsky
jeffrey.bushofsky@ropesgray.com
ROPES & GRAY LLP
191 N. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5559